UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANASTASIA C. WLADYSIAK,

                Plaintiff,        Civil Action No. 16-12961
                                         Honorable Laurie J. Michelson
                                         Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 21]**

Plaintiff Anastasia Wladysiak ("Wladysiak") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [15, 21], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Wladysiak is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [21] be DENIED, Wladysiak's Motion for Summary Judgment [15] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Recommendation.

**II.     REPORT**

    **A.     Procedural History**

On July 31, 2008, Wladysiak filed an application for DIB, alleging a disability onset date of January 1, 2006.[1] (Tr. 112-16, 119-24). This application was denied initially on September 29, 2008. (Tr. 60-64). Wladysiak filed a timely request for an administrative hearing, which was held on July 13, 2010, before ALJ John Rabaut. (Tr. 33-56). On July 27, 2010, ALJ Rabaut issued a written decision denying Wladysiak's application for benefits. (Tr. 17-28). On September 9, 2011, the Appeals Council denied review. (Tr. 3-7).

On October 12, 2011, Wladysiak filed suit in this Court, seeking judicial review of the Commissioner's unfavorable decision. On March 14, 2013, Magistrate Judge Michael Hluchaniuk issued a Report and Recommendation ("R&R"), recommending that the case be remanded for further proceedings and, specifically, to re-weigh the medical opinion evidence. (Tr. 884-920). The R&R was adopted by the Honorable Paul D. Borman on June 10, 2013. (Tr. 921-22). Subsequently, on September 27, 2013, the Appeals Council issued an Order remanding the case for further administrative proceedings. (Tr. 924-27).

As a result, a second administrative hearing was held before ALJ Ena Weathers on July 9, 2015. (Tr. 810-51). On July 17, 2015, ALJ Weathers issued a written decision again denying Wladysiak's application for benefits. (Tr. 794-802). On June 15, 2016, the Appeals Council denied review. (Tr. 777-82). Wladysiak timely filed for judicial review of that final decision on August 15, 2016. (Doc. #1).

---

[1] Wladysiak's date last insured is December 31, 2007. (Tr. 796). Thus, she must establish disability on or before that date in order to be entitled to DIB.

### B. Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

  *1.     Wladysiak's Reports and Testimony*

At the time of the 2015 administrative hearing, Wladysiak was 45 years old, and at 5'5" tall, weighed 148 pounds. (Tr. 139, 817). She was married and lived in a house with her husband and two minor children. (Tr. 817-18). She completed high school and two years of college. (Tr. 148, 819). Previously, she worked in dental offices and, most recently, as a babysitter. (Tr. 143).

Wladysiak alleges disability primarily as a result of fibromyalgia, migraine headaches, and degenerative disc disease of the lumbar spine. (Tr. 142, 816). She testified that, during the relevant period of time, she had constant pain in her neck and shoulders which, at times, was so unbearable that she could not turn her head or move her neck. (Tr. 820, 825). She could not sit or stand for an extended period of time (less than ten minutes), could not reach above her head, could not lift more than five pounds, and had difficulty holding up her neck for long periods of time. (Tr. 821, 828). She suffered migraine headaches three or four times a month, which lasted up to three days, and were accompanied by photophobia, "sound phobia," and nausea. (Tr. 834). Over the years, she has taken numerous medications for her conditions, including Lyrica, Cymbalta, Mobic, Topamax, gabapentin, Botox, Lodine, and Mexiletine. (Tr. 822-24).

In describing her daily activities between the alleged onset date and the date last insured, Wladysiak explained that she could not lift or bathe her young daughter, could not walk even one block, and could not prepare meals. (Tr. 830). In terms of chores, she could not do any "heavy stuff," such as laundry or vacuuming. (Tr. 161, 828). She had difficulty sleeping at night because of pain and ended up napping during the day. (Tr. 160, 825). She also had memory problems – suffering from "fibro fog" – and was constantly forgetting things. (Tr. 832-33).

4

*2.     Medical Evidence*

The Court has thoroughly reviewed Wladysiak's medical record.  In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

*3.     Vocational Expert's Testimony*

Zachary Matthews testified as an independent vocational expert ("VE") at the 2015 hearing.  (Tr. 844-48).  The ALJ asked the VE to imagine a claimant of Wladysiak's age, education, and work experience who could perform sedentary work, with the following additional limitations:  required a sit-stand at will option; no climbing ladders, ropes or scaffolds; only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs; no work requiring constant flexion, rotation, or extension of the neck; only occasional reaching while handling; must avoid concentrated exposure to temperature extremes, wetness, humidity, and excessive vibration; and limited to low stress work, characterized by only occasional decision-making and only occasional changes in the work setting.  (Tr. 846-47).  The VE testified that the hypothetical individual would be capable of working in the jobs of information clerk (55,000 jobs nationally), office clerk (69,000 jobs), and processor (28,000 jobs).  (*Id.*).

**D.     The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that, prior to the date last insured, Wladysiak was not disabled under the Act.  At Step One, the ALJ found that Wladysiak did not engage in substantial gainful activity between January 1, 2006 (the alleged onset date) and December 31, 2007 (the date last insured).  (Tr. 796).  At Step Two, the ALJ found that, through the date last insured, Wladysiak had the severe impairments of fibromyalgia,

5

degenerative disc disease, two herniated lumbar spine discs, and migraine headaches. (Tr. 797). At Step Three, the ALJ found that, through the date last insured, these impairments, whether considered alone or in combination, did not meet or medically equal a Listing. (*Id.*).

The ALJ then assessed Wladysiak's residual functional capacity ("RFC"), concluding that, through the date last insured, she was capable of performing sedentary work, with the following additional limitations: required a sit-stand at will option; no climbing ladders, ropes or scaffolds; only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs; no work requiring constant flexion, rotation, or extension of the neck; only occasional reaching while handling; must avoid concentrated exposure to temperature extremes, wetness, humidity, and excessive vibration; and limited to low stress work, characterized by only occasional decision-making and only occasional changes in the work setting. (Tr. 797-98).

At Step Four, the ALJ determined that, through the date last insured, Wladysiak was not capable of performing her past relevant work. (Tr. 801). At Step Five, the ALJ concluded, based in part on the VE's testimony, that, through her date last insured, Wladysiak was capable of performing a significant number of jobs that exist in the national economy. (Tr. 801-02). As a result, the ALJ concluded that Wladysiak was not disabled under the Act between January 1, 2006 (the alleged onset date) and December 31, 2007 (the date last insured). (Tr. 802).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter

differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

Wladysiak primarily argues that, despite the fact that this Court previously remanded the case with explicit instructions to re-weigh the medical opinion evidence, ALJ Weathers erred in evaluating the opinions of her three treating physicians, Michael Kizy, M.D., Lawrence Eilender, M.D., and Larry Silverman, M.D.[2] (Doc. #15-2 at 24-30). Specifically, Wladysiak asserts that the ALJ "simply made a conclusory finding that none of these medical opinions were based on evidence that existed prior to the date last insured[.]" (*Id.* at 25 (citing Tr. 800)). For the reasons set forth below, the Court agrees that ALJ Weathers failed to properly apply the treating physician rule and finds that remand is again warranted.[3]

*1.     The Relevant Treating Physician Opinions*

Dr. Lawrence Eilender, a neurologist who had treated Wladysiak since 2005, opined in October 2009 that her diagnoses included fibromyalgia, muscle spasms, cervical pain, and migraines. (Tr. 687). The clinical findings he listed in support of these diagnoses were "spasms," apparently in the cervical area. (*Id.*). Dr. Eilender opined that Wladysiak was able to

---

[2] Wladysiak also argues that ALJ Weathers erred in evaluating the credibility of her subjective complaints. (Doc. #15-2 at 30-34). Because the Court is recommending remand on other grounds, it need not address in detail the merits of this argument. On remand, however, the ALJ should thoroughly evaluate Wladysiak's subjective complaints.

[3] Much of the voluminous record contains medical evidence post-dating Wladysiak's date last insured, which, for the most part, is not directly relevant to the issues before the Court. Thus, the Court will focus its discussion on medical evidence preceding December 31, 2007.

sit for four hours total and stand/walk for two hours total in an eight-hour workday; could never lift more than ten pounds; had significant limitations in performing repetitive reaching, handling, fingering, and lifting due to pain and limited movement; that her pain, fatigue, or other symptoms were frequently severe enough to interfere with her attention and concentration; and that she would be absent from work more than three days per month. (Tr. 689-93). Dr. Eilender further opined that medication had not completely relieved Wladysiak's pain without unacceptable side effects. (Tr. 689).

Dr. Larry Silverman, a rheumatologist, began treating Wladysiak in August 2006. (Tr. 348). In September 2008, he completed a Multiple Impairment Questionnaire, in which he listed Wladysiak's diagnoses as fibromyalgia and arthritis flare-ups. (Tr. 583-90). Clinical findings included widespread pain, with tender points in the back, arms, and legs, and her primary symptoms were pain and fatigue. (Tr. 583-84). Dr. Silverman opined that Wladysiak was able to sit for less than one hour, stand for less than one hour, and walk for two hours total in an eight-hour workday. (Tr. 585). He further opined that she could never lift more than ten pounds; was unable to reach or lift above her head; suffered from pain, fatigue, or other symptoms that constantly interfered with her attention and concentration; and would miss more than three days of work per month, on average. (Tr. 586-89). Subsequently, in March 2009, Dr. Silverman completed a narrative report, in which he opined that Wladysiak had significant problems with musculoskeletal pain that prevented her from working, despite attempts at treatment with many different medications. (Tr. 594). In November 2009, Dr. Silverman reiterated Wladysiak's diagnoses and opined that she could sit for no more than four hours in an eight-hour workday. (Tr. 1237). And, in March 2011, Dr. Silverman completed an updated narrative, reporting no changes in Wladysiak's diagnoses, medical findings, or the limitations described in his earlier

9

opinions, and again stating his belief that, since at least August 2006, she had been unable to perform even sedentary work. (Tr. 774-75).

Dr. Michael Kizy, who had been Wladysiak's treating physician since at least 2005,[4] opined in June 2008 that she was suffering from significant back and neck pain stemming from fibromyalgia. (Tr. 378). He further indicated that Wladysiak had been treating with a rheumatologist and neurologist, and had tried many different medications, without any significant symptomatic relief. (*Id.*). Dr. Kizy opined that Wladysiak was disabled as a result of her symptoms and was unable to work for at least one year. (*Id.*). In a second letter, dated July 16, 2009, Dr. Kizy reported that he continued to treat Wladysiak, but she was primarily followed by neurology and rheumatology. (Tr. 599). Dr. Kizy again opined that Wladysiak had been disabled since January 2006 and had not recovered enough to return to work. (*Id.*). On August 11, 2009, Dr. Kizy completed a Multiple Impairment Questionnaire, in which he listed diagnoses of fibromyalgia and migraine headaches and identified clinical findings of multiple trigger point tenderness (especially in the neck and shoulders). (Tr. 600). He opined that Wladysiak was able to sit for two hours total and stand/walk three hours total in an eight-hour workday. (Tr. 602). Dr. Kizy further opined that Wladysiak could only occasionally lift up to ten pounds; had significant limitations performing repetitive reaching, handling, fingering, and lifting; "constantly" experienced pain, fatigue, or other symptoms severe enough to interfere with her attention and concentration; was incapable of even "low stress" jobs; and would likely miss work more than three days per month. (Tr. 600-06). In 2014, Dr. Kizy opined that, since January 2006, Wladysiak could sit for only one hour; would need to elevate both legs to waist level; could only occasionally lift and carry five pounds; her pain, fatigue, or other symptoms

---

[4] While one record indicates that Wladysiak began treating with Dr. Kizy in 2005 (Tr. 600), others indicate that this relationship began in 1995 (Tr. 378, 599).

frequently interfered with her concentration; and she would miss work more than three times per month. (Tr. 1203-07). And, finally, Dr. Kizy completed a narrative report in June 2015, in which he reported unchanged findings and limitations. (Tr. 1421).

### 2. ALJ Weathers Erred in Applying the Treating Physician Rule

Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted). If the ALJ declines to give a treating physician's opinion controlling weight, she must provide "good reasons" for the weight given the opinion, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source[.]" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2)). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *5 (July 2, 1996)). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.

Previously, ALJ Rabaut afforded "limited weight" to the opinions of Dr. Eilender, Dr. Silverman, and Dr. Kizy. (Tr. 23-24). In concluding that the reasons articulated by ALJ Rabaut for discounting these opinions were not supported by substantial evidence, Magistrate Judge

11

Hluchaniuk specifically noted that the ALJ "cherry-picked a few positive statements from years of treating records with multiple physicians to conclude that their opinions should be almost entirely rejected." (Tr. 907). Thus, the Court instructed the ALJ to re-evaluate these opinions, as well as the supporting evidence, and to properly determine how much weight the opinions should be afforded. (*Id.*).

Following remand, ALJ Weathers obtained additional medical evidence from a medical expert, admitted new evidence, conducted a new hearing, and issued a new decision. (Tr. 791-851). In her 2015 decision, ALJ Weathers specifically addressed the medical opinions from Dr. Kizy, Dr. Silverman, and Dr. Eilender, saying:

> The Administrative Law Judge is fully-cognizant of the many medical source statements in the record. However, all of them were issued after the date last insured. Although some of those reports attempt to date back the restrictions to before the date last insured, the medical findings in this case, on and before that date, do not support the limitations as of January 2006 or even before January 1, 2008. The undersigned suspects that those attempts to date back the restrictions were merely sympathetic conclusions from the reporting physicians. The attempts to do so are mere conjecture and are not supported by the record on and before December 31, 2007. It is also noted that most of the medical source statements were issued by Dr. Michael Kizzy [sic]. He has submitted far less treatment notes than either Dr. Eilender or Dr. Silverman, and only treats the claimant about once a year []. That doctor's minimal treatment notes and occasional treatment dates detract from the probative value of his conclusions. While Dr. Eilender and Dr. Silverman have seen the claimant more often, their treatment notes do not support their conclusions regarding the severity of the claimant's symptoms on and before the date last insured.

(Tr. 800). There are two problems, however, with the ALJ's analysis, though one more significant than the other. First, ALJ Weathers' brief discussion of the opinions in question makes clear that she failed to comply with this Court's explicit directive to re-weigh the medical opinion evidence in accordance with the factors set forth in 20 C.F.R. § 404.1527(c), and to articulate the weight to be afforded each treating physician opinion. Second, the reasons articulated by ALJ Weathers for discounting the opinions of Wladysiak's treating physicians are

12

not supported by substantial evidence.

### a. Failure to Explicitly Weigh Treating Physician Opinions

As an initial matter, ALJ Weathers erred in failing to indicate what weight, if any, was given to the opinions of Dr. Silverman, Dr. Eilender, and Dr. Kizy. An ALJ must specify what weight she assigns to the opinion of a treating physician. *See Wilson*, 738 F.3d at 545. If an ALJ fails to do so, "[t]his alone constitutes error, as '[a] finding that a treating source medical opinion … is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (alterations in original) (quoting *Blakley*, 581 F.3d at 408). Courts have recognized, however, that if an ALJ fails to comply with the procedural requirements associated with the treating physician rule, such failure may be excused as harmless "[s]o long as the decision permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion[.]" *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 805 (6th Cir. 2011) (internal quotations omitted).

In this case, while it is clear that ALJ Weathers did not give the opinions of Dr. Silverman, Dr. Eilender, or Dr. Kizy controlling weight, it is not at all clear whether she gave these opinions some weight or none at all. At the same time, however, where the ALJ did set forth reasons for discounting these opinions, the procedural safeguards associated with this aspect of the treating physician rule are at least arguably satisfied, because the decision allows for an understanding of *why* ALJ Weathers afforded these opinions something less than deferential weight. Under the circumstances, then, any error in ALJ Weathers' failure to specify what weight these opinions were given is harmless, and remanding merely for the purpose of requiring the ALJ to state exactly how much weight she gave these opinions would be a useless formality. *See Wilson*, 378 F.3d at 547.

### b. The Reasons Articulated for Dismissing the Treating Physician Opinions are Not Supported by Substantial Evidence

More importantly, however, the reasons articulated by ALJ Weathers for discounting the opinions of Wladysiak's treating physicians are not supported by substantial evidence. As an initial matter, the ALJ rejected the opinions at issue in part because "all of them were issued after the date last insured." (Tr. 800). Wladysiak argues, however, that: "As the District Court pointed out when it remanded this case, all the treating sources who offered opinions on Ms. Wladysiak's functioning were treating her prior to the date last insured and there is nothing inappropriate about retrospective opinions from treating doctors that inherently renders them less persuasive than other treating source opinions." (Doc. #15-2 at 26 (citing Tr. 908)).

In *Terry v. Comm'r of Soc. Sec.*, 2015 WL 12712079, at *10 (E.D. Mich. July 14, 2015), the court considered a similar dispute and agreed with the claimant's point of view. Specifically, that court held:

> The undersigned is also not convinced that Dr. Everingham's opinions should be dismissed because they may be retrospective in nature. Merely because a medical opinion is "retrospective," it is not deficient and may be entitled to the same deference given to all treating physician opinions. This is not a case where a treating physician who did not treat the claimant during the time period in question is offering such a retrospective opinion. Rather, Dr. Everingham was plaintiff's treating physician before, during, and after the relevant time period, and thus has first-hand knowledge of plaintiff's condition prior to her date last insured…. Given that Dr. Everingham treated plaintiff for many years, before and after the insured period, the ALJ did not give due consideration to Dr. Everingham's opinions and the trajectory of plaintiff's medical records.

*Id.* (internal citations omitted). For these same reasons, where Drs. Silverman, Kizy, and Eilender were all treating Wladysiak prior to her date last insured, the simple fact that their medical opinions were issued after that date does not in and of itself require that those opinions be discounted. *See also Wladysiak v. Comm'r of Soc. Sec.*, 2013 WL 2480665, at *11 (E.D. Mich. June 10, 2013) (citing *Lancaster v. Astrue*, 2009 WL 1851407, at *11 (M.D. Tenn. June

14

29, 2009) ("[A] retrospective diagnosis relating back to the insured period may be considered proof of disability only if it is corroborated by evidence contemporaneous with the eligible period.")).

In addition, the other reasons articulated by ALJ Weathers for discounting Wladysiak's treating physician opinions are not supported by substantial evidence. Specifically, the ALJ discounted the opinions of Dr. Silverman and Dr. Eilender[5] because "their treatment notes do not support their conclusions regarding the severity of the claimant's symptoms on and before the date last insured." (Tr. 800). The ALJ does not, however, discuss in any detail whatsoever which aspects of these physicians' treatment notes she found to be inconsistent with their medical opinions, or why. Merely asserting a conclusion that the treating physician opinions are not supported by the evidence does not satisfy the "treating physician" rule's requirement that the ALJ provide "good reasons" for the weight given to such opinions. *See Wilson*, 378 F.3d at 544; *Gayheart*, 710 F.3d at 376. Moreover, as Wladysiak points out, Dr. Eilender based his opinion, at least in part, on evidence of muscle spasms, pain and fatigue. (Tr. 687-88). These findings appear to be well-documented in Dr. Eilender's treatment notes. (Tr. 293 ("a lot of spasm recently in her neck"), 300 ("mild to moderate spasm noted on palpation over more than

---

[5] With respect to Dr. Kizy, in discounting his opinions, ALJ Weathers noted that his "minimal treatment notes and occasional treatment dates detract from the probative value of his conclusions." (Tr. 800). Specifically, the ALJ noted that Dr. Kizy only treated Wladysiak "about once a year" and submitted "far less treatment notes than either Dr. Eilender or Dr. Silverman[.]" (*Id.*). The Commissioner argues that this "is a sufficient explanation to satisfy the court's remand instructions to explain the weight afforded to Dr. Kizy." (Doc. #21 at 14). The Court agrees that "frequency of examination" is one of the factors to be considered when evaluating treating physician opinions. 20 C.F.R. § 404.1527(c)(2)(i). However, ALJ Weathers makes no mention of the other relevant factors, such as the length of the treatment relationship, the supportability of the opinions, and the consistency of the opinions with the record as a whole, all of which may well weigh in favor of affording at least some weight to Dr. Kizy's opinions. *See* 20 C.F.R. § 404.1527(c)(2), (3), and (4). On remand, when reevaluating these opinions, as well as those of Wladysiak's other treating physicians, the ALJ must ensure that a thorough analysis of all of the relevant factors is undertaken.

20 areas in the trapezius, semispinalis, and splenius muscles bilaterally"), 307 ("numerous areas of point tenderness over the trapezius muscles bilaterally"), 308 (mild spasm over the trapezius muscle on the left side), 315 ("significant spasm and various areas of point tenderness"), 317 (pain on palpitation, with numbness and weakness)). Similarly, Dr. Silverman, Wladysiak's treating rheumatologist, based his opinions on findings of fatigue and widespread pain, with multiple tender points (particularly in the back, arms, and legs). (Tr. 583). Again, contrary to the ALJ's findings, Dr. Silverman's opinions were consistent with his treatment notes, which repeatedly document these findings. (Tr. 331-32 ("multiple tender points in the trapezius muscles, upper/lower back, arms, and legs"), 335 ("multiple tender points"), 338 (tender points in the trapezius muscles and upper back), 341 (tender points in the right trapezius muscle and left lateral arm), 343 ("scattered tender points"), 345 ("multiple tender points"), 349 ("tender points in the cervical muscles, trapezius region, upper arms, and upper/lower legs")). Thus, the Court cannot say that ALJ Weathers' decision to discount the opinions of Dr. Silverman and Dr. Eilender as inconsistent with their own treatment notes is supported by substantial evidence.

Additionally, in rejecting the opinions of Wladysiak's treating physicians, and in concluding that Wladyskiak could perform a limited range of sedentary work, ALJ Weathers indicated that she gave "more weight" to the opinion of Mark Farber, M.D., the medical expert in this case. (Tr. 800). Specifically, the ALJ referenced Dr. Farber's hearing testimony that, since 2009, Wladysiak's impairments have medically equaled Listing 14.09 (inflammatory arthritis) but that, prior to 2009, her fibromyalgia was "not as severe." (Tr. 800, 838-39). Noting that Dr. Farber had "much more Social Security program knowledge" than Wladysiak's treating physicians, and that he had the benefit of reviewing her entire case file, the ALJ found that Dr. Farber's opinion deserved "very substantial weight." (Tr. 800).

The problem, however, is that Dr. Farber failed to offer an opinion as to Wladysiak's functioning prior to the date last insured – and certainly never opined that she could perform a range of sedentary work, as found by ALJ Weathers. The Commissioner argues that Dr. Farber's testimony indicates that Wladysiak's fibromyalgia "worsened over time, and was not disabling before the expiration of her insured status." (Doc. #21 at 20 (citing Tr. 839)). While it might be true that Wladysiak's impairments progressively worsened, Dr. Farber testified only that it is "very clear" that, since 2009, her impairments have medically equaled Listing 14.09(c), and that he believed that level of "severity" began in 2009. (Tr. 838-39, 843.). This is not the same as testifying as to a belief that the record evidence showed Wladysiak could perform the demands of sedentary work prior to 2009; and, indeed, nowhere in Dr. Farber's testimony does he so indicate. In other words, Dr. Farber offered no opinion whatsoever as to Wladysiak's functioning during the relevant period, and the ALJ erred in the conclusions she drew from Dr. Farber's silence on this issue. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 81 (2d Cir. 1999) ("[T]here was no indication in the reports that the consultants intended anything by their silence or that they set out to express [an] opinion on [the] subject of Rosa's sedentary work capacity.") (internal quotation marks omitted) (alterations in original); *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("'A … doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so ….'").

Given all of these facts, the Court cannot conclude that ALJ Weathers' RFC finding is supported by substantial evidence. Despite being explicitly instructed to re-weigh the medical opinion evidence, the ALJ failed to articulate what weight she afforded each treating physician opinion. Moreover, to the extent ALJ Weathers discounted the multiple opinions of all three of

Wladysiak's treating physicians, the reasons she articulated for doing so are not supported by substantial evidence in the record. And, although the ALJ gave "very substantial weight" to the opinion of the medical expert, Dr. Farber, she failed to recognize that Dr. Farber offered no opinion whatsoever as to Wladysiak's functional capacity and/or limitations during the relevant period of time. For all of these reasons, the Court concludes that remand is warranted so that the ALJ may properly weigh the treating physician opinions and determine Wladysiak's RFC.

### III.  CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [21] be DENIED, Wladysiak's Motion for Summary Judgment [15] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that this case be remanded to the ALJ for further proceedings consistent with this Recommendation.

Dated: June 30, 2017                       s/David R. Grand
Ann Arbor, Michigan                DAVID R. GRAND
                                            United States Magistrate Judge

### REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and*

18

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

> *Note these additional requirements at the direction of Judge Michelson:*

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
